ADAM L. BRAVERMAN
United States Attorney
JONATHAN I. SHAPIRO
Assistant U.S. Attorney
California Bar No.: 268954
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8225
Email: jonathan.shapiro@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN ROCKCOONS,<br><br>Defendant. | Case No. 17CR3690-AJB<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>**(1) COMPEL DISCOVERY; AND**<br>**(2) PRESERVE EVIDENCE.**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   May 21, 2018<br>Time:  2:00 p.m. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Adam L. Braverman, United States Attorney, and Jonathan I. Shapiro, Assistant United States Attorney, and hereby files its Response in Opposition to the above-referenced motions. These Motions are based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

//

//

# I.

# STATEMENT OF THE CASE

On November 8, 2017, Morgan Rockcoons ("Defendant") was indicted by a federal grand jury for (i) money laundering, in violation of Title 18 U.S.C. § 1956(a)(3)(B); and (ii) operating an unlicensed money transmitting business, in violation of Title 18 U.S.C. § 1960(a). Defendant was arrested on February 9, 2018, in the District of Nevada, and he was arraigned on the indictment on February 22, 2018. On March 15, 2018, Defendant filed a Motion to Compel Discovery and Preserve Evidence. The United States hereby files its Response and Opposition to the above-referenced motions and files its Motion for Reciprocal Discovery.

# II.

# STATEMENT OF FACTS

*Overview of Bitcoin*

Bitcoin is a digital, or "virtual," currency that exists entirely on the Internet and not in any physical form. No government, bank, or company generates Bitcoin. Instead, computer software operating on a decentralized "peer-to-peer" network generates and controls the digital currency. To acquire Bitcoin, a user typically must purchase the currency from a Bitcoin "exchanger." Bitcoin exchangers generally accept payments of conventional currency and, in return for a commission, transfer a corresponding number of Bitcoin, based on a floating exchange rate, to a Bitcoin address designated by the customer. A Bitcoin address (known as a "wallet") is analogous to a bank account number, designated by a complex string of letters and numbers.

Bitcoin exchangers doing business in the United States are considered money transmitters under federal anti-money laundering ("AML") regulations and are required to register with the Financial Crimes Enforcement Network ("FinCEN"). *See* 31 C.F.R. § 1010.100(ff)(5); *see also* FinCEN, *Guidance on the Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*,

March 18, 2013, FIN-2013-G001, at 4-5, *available at* http://www.fincen.gov/statutes_regs/guidance/pdf/FIN-2013-G001.pdf ("FinCEN Guidance").

*Identification of Defendant*

In September 2015, Homeland Security Investigations (HSI) learned that San Diego-based Bitcoin exchangers were advertising their services on the website LocalBitcoins.com. The most prolific San Diego-based seller at the time went by the nickname "Metaballo," and advertised his services as both a trader and a seller of Bitcoin.

HSI reviewed Metaballo's website and found Facebook pages for Kinetics.cc and Metaballo. The Kinetics Facebook page included a post, dated July 11, 2014, which read:

> "Dear Bitcoin community, my name is Morgan Rockwell, I am CEO of Bitcoin Kinetics Inc. I created the first Bitcoin operated service machine to allow Bitcoin to be used in the real world in all machines and businesses. We are rapidly expanding and growing into new territories, industries into a competitive and profitable environment."

Metaballo's Facebook page included posts identifying Defendant as "Morgan Rockwell." This Facebook page also contained a post, dated January 15, 2014, stating "Metaballo on LocalBitcoins.com buy and sell bitcoins with trader Metaballo."

In April 2016, Defendant's LocalBitcoins.com profile showed that he continued to advertise as a trader and seller of Bitcoin in San Diego, with his profile reflecting that he had engaged in more than 500 transactions, describing him as a professional trader. As of October 2017, Defendant's profile indicated that he conducted more than 1,000 Bitcoin trades with more than 644 people.

In September 2015, April 2016, and again in August 2017, HSI confirmed that neither Defendant nor any of his companies were registered as a money services business with FinCEN or the State of California.

***Undercover Investigation***

In December 2016, an undercover officer (UCO) (known to Defendant as "Nima") left a voice message with Defendant (at the number posted by Defendant on LocalBitcoins.com) requesting his service in exchanging cash to Bitcoin. In subsequent text message conversations, Defendant explained to the UCO that Defendant was aware of and followed anti-money laundering and know your customer requirements. Defendant also informed the UCO of the currency transaction reporting requirement, stating that if the UCO engaged in a transaction in excess of $10,000 USD cash, information on the UCO would have to be obtained. In the course of this early exchange of text messages with the UCO, Defendant provided the UCO with Defendant's full name as "Morgan Rockwell," and further provided his "legal name" as "Morgan Rockcoons." Defendant also provided the UCO with Defendant's LocalBitcoins.com profile as proof that Defendant exchanged between 30 and 60 bitcoins per week.

In a text message, the UCO informed Defendant that the UCO was engaged in the manufacture of butane hash oil. The UCO informed Defendant that the cash was being exchanged to Bitcoin to buy an extraction device, which would be used to manufacture hash oil. In text messages, Defendant made statements to the UCO that indicated that Defendant was knowledgeable about butane hash oil. Defendant also told the UCO that Defendant operated a business engaged in the sale of marijuana and hash oil in San Francisco. Defendant offered to assist the UCO in selling hash oil manufactured by the UCO, via Defendant's business. Defendant wrote to the UCO that Defendant wanted to be the "Steve Jobs of cannabis and bitcoin," and that he had provided currency exchange services to other marijuana industry individuals and entities.

In a text message, the UCO told Defendant that, because the UCO was engaged in the manufacture and sale of hash oil, the UCO did not want to provide any identifying information. Defendant responded that he understood and suggested that the UCO could break up the transaction over two days, each transaction being less than $10,000 USD, to avoid the reporting requirement. Defendant later completely abandoned the requirement of making the UCO break up the transaction into two separate transactions, accepting all $14,500 from the UCO in one transaction, and not requiring any identifying information from the UCO.

The UCO and Defendant discussed via text messages various options for providing the cash to Defendant, including structuring Western Union money transfers, structuring the purchase of money orders, and structuring the deposit of cash into one of Defendant's bank accounts. Ultimately, Defendant and the UCO agreed that the UCO would send the cash via FedEx to Defendant. Defendant specifically gave the UCO a series of suggestions on how to conceal the cash in the package to avoid detection.

On December 30, 2016, the UCO sent Defendant $14,500 USD cash concealed in a FedEx package for the purpose of Defendant exchanging it to Bitcoin. On January 3, 2017, the package was delivered to Defendant, which Defendant confirmed to the UCO via text message. On January 8, 2017, Defendant transferred 9.998 Bitcoins to the UCO, with an equivalent value of $9,208.62, keeping a fee of $5,291.38 (more than thirty-six percent).

## III.

## ARGUMENT

### A. MOTION TO COMPEL DISCOVERY

On about February 22, 2018, the United States produced about 6.6 gigabytes of discovery, including audio and video recordings, text messages, photos, and reports. The United States will continue to provide additional discovery as it becomes available.

The United States also recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The United States has complied and will continue to comply with its discovery obligations going forward. To date, the United States has received no reciprocal discovery.

### Defendant's Statements

Any statements by Defendant in response to interrogation or recorded during the course of this investigation have been provided. Defendant's text messages have been provided.

### Defendant's Prior Criminal Record

Defendant has no known criminal record.

### 404(b) Evidence

If the United States intends to offer any evidence under Rule 404(b) of the Federal Rules of Evidence, it will provide notice promptly to Defendant.

### Evidence Seized/Preservation of Evidence/Tangible Objects

The United States has produced all audio and video recordings, photographs, and text messages.

### *Brady/Giglio*/Impeachment Evidence/Witnesses Favorable to Defense

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive, impeachment or criminal investigation of any of its witnesses of which it becomes aware. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted. The United States believes that this covers all information Defendant requests regarding HSI Special Agent Nick Jones. Defendant is not entitled to Agent Jones's curriculum vitae and has provided no authority for that request.

//

**Government Witnesses's Addresses**

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced. The United States objects, however, to Defendant's request for the addresses and contact information of government witnesses. The United States has provided Defendant with the reports that contain the names of law enforcement officers involved in the investigation of this case. Although not required in non-capital cases, in its trial memorandum, the United States will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief. See United States v. W.R. Grace, 526 F.3d 499, 510-11 (9th Cir. 2008) (en banc) (stating that while Rule 16 does not mandate the disclosure of non-expert witnesses, the district court has the authority to order the United States to produce a witness list pretrial). While the United States has agreed to disclose a list of its witnesses in its trial memorandum, we object to the disclosure of witness's addresses. See United States v. Napue, 834 F.2d 1311, 1317 (7th Cir. 1987) ("In fact, Congress rejected a proposal that would have required the government and the defendant to exchange the names and addresses of their witnesses three days before trial.") The Ninth Circuit addressed this issue in United States v. Jones, 612 F.2d 453 (9th Cir. 1979). In Jones, the Court made it clear that, absent a showing of necessity by the defense, there should be no pretrial disclosure of the identity of United States witnesses. Id. at 455. Several other Ninth Circuit cases have reached the same conclusion. See, e.g., United States v. Armstrong, 621 F.2d 951, 1954 (9th Cir. 1980); United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980); United States v. Paseur, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant is not entitled as a matter of right to the name and address of any witness.").

**Reports of Scientific Tests or Examinations**

Pursuant to Rule 16(a)(1)(F), the United States will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody

or control of the United States, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the United States, and which are material to the preparation of the defense.

**Informants and Cooperating Witnesses**

The Government will identify cooperating witnesses and will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into.  See Roviaro v. United States, 353 U.S. 53 (1957).  This information will be provided in advance of trial with sufficient time to avoid any delays.

**Preservation of Evidence**

The government has no objection to the preservation of the handwritten notes taken by any of the government's agents that are available at this time.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses).  However, the government objects to providing Defendant with a copy of any available rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case probably do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available

in other forms). The notes are not <u>Brady</u> material because the notes do not present any material exculpatory information, or any evidence favorable to defendants that is material to guilt or punishment. <u>Brown</u>, 303 F.3d at 595-96 (rough notes were not <u>Brady</u> material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or <u>Brady</u>, the notes in question will be provided to Defendant.

Otherwise, the government does not object to preserving evidence that was seized in this case that is currently within its custody and control. Pursuant to Rule 16(a)(1)(E), the government will allow Defendant, upon reasonable notice, to examine, inspect, and copy all seized tangible objects that are within its custody and control, and that are either material to the preparation of Defendant's defense, intended for use by the United States during its case-in-chief, or were obtained from or belong to Defendant.

### Conclusion

In sum, the United States has already has produced considerable discovery in this case. To the extent Defendant requests specific documents or types of documents, the United States will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the United States respectfully requests that no orders compelling specific discovery be made at this time.

### IV.

**A.   MOTION FOR RECIPROCAL DISCOVERY**

The United States moves the Court to order Defendant provide all reciprocal discovery to which the United States is entitled under Rules 16(b) and 26.2. This includes, but is not limited to, the disclosures mandated by Rule 16(b)(2), namely all exhibits and documents which Defendant "intends to introduce as evidence in chief at the trial" and a written summary of the names, anticipated testimony, and bases for

opinions of experts the defendant intends to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

### B.  LEAVE TO FILE FURTHER MOTIONS

The United States respectfully requests the opportunity to file further motions should new information or legal issues arise.

### V.

### CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's motions be denied where opposed.

DATED: May 18, 2018

Respectfully submitted,
ADAM L. BRAVERMAN
United States Attorney

/s/*Jonathan I. Shapiro*
Jonathan I. Shapiro
Assistant United States Attorney

ADAM L. BRAVERMAN
United States Attorney
JONATHAN I. SHAPIRO
Assistant U.S. Attorney
California Bar No. 268954
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619)-546-8225
Email: joshua.mellor@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br>  v.<br><br>MORGAN ROCKCOONS,<br><br>       Defendant. | Case No.: 17CR3690-AJB<br><br>**CERTIFICATE OF SERVICE** |

    I, Jonathan I. Shapiro, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of the **United States' Response in Opposition to Defendant's Motions to Compel Discovery and Preserve Evidence** on the following party by electronically filing the foregoing with the Clerk of the U.S. District Court for the Southern District of California using its ECF System.

//
//
//

>David Z. Chesnoff
>Richard Schonfeld
>Counsel for defendant Morgan Rockcoons

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 18, 2018.

>*s/Jonathan I. Shapiro*
>JONATHAN I. SHAPIRO
>Assistant U.S. Attorney