1  **DAVID Z. CHESNOFF, ESQ.**
   **RICHARD A. SCHONFELD, ESQ.**
2  **CHESNOFF & SCHONFELD**
   520 South Fourth Street
3  Las Vegas, NV 89101
   Telephone (702) 384-5563
4  Email: Dzchesnoff@cslawoffice.net
   Email: Rschonfeld@cslawoffice.net
5  Attorneys for Defendant *Morgan Rockcoons*

6                  **UNITED STATES DISTRICT COURT**

7           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

8  **UNITED STATES OF AMERICA,** )
9                                )  **CASE NO. 17-CR-03690-AJB**
                  **Plaintiff,**   )
10                               )  **REPLY TO RESPONSE (ECF 26)**
   **v.**                        )  **IN OPPOSITION TO MOTION**
11                               )  **TO DISMISS INDICTMENT (ECF 25)**
   **MORGAN ROCKCOONS,**         )
12                               )
                  **Defendant.**   )  **Date:    8/21/18**
13                               )  **Time:    1:30 p.m.**
   _____ )

14  TO: ADAM L. BRAVERMAN, UNITED STATES ATTORNEY; AND
    JONATHAN SHAPIRO, ASSISTANT UNITED STATES ATTORNEY:
15
16        COMES NOW, Defendant MORGAN ROCKCOONS, by and through his
17  counsel, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ.,
    of the law firm of CHESNOFF & SCHONFELD, and hereby files his Reply to
18
    Response (ECF 26) in Opposition to Motion to Dismiss Indictment (ECF 25).
19
20        This Reply is based upon the papers and pleadings on file herein, the
    Memorandum of Points and Authorities in support therefor, cited exhibits, and any
21
22  argument that may be heard.

23        Dated this 13th day of August, 2018.

24                          Respectfully Submitted:

25                          /s/ Richard A. Schonfeld
                            **DAVID Z. CHESNOFF, ESQ.**
26                          **RICHARD A. SCHONFELD, ESQ.**
                            Attorneys for Defendant *Morgan Rockcoons*
27

28                                      1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

I.   **THE ALLEGED SECTION 1960 VIOLATION SHOULD BE DISMISSED**
3   **AS DEFENDANT WAS NOT ENGAGED IN OPERATING A "MONEY**
     **TRANSMITTING BUSINESS," AND THE GOVERNMENT HAS NOT**
4   **PROPERLY PLED A 1960 VIOLATION.**

5        The government's Response and Opposition is riddled with distinguishable

6   cases as well as legislative history of Section 1960 which indicates that the statute

7   was recently amended in the aftermath of September 11, 2011 to combat terrorism

8   including Osama Bin Laden and Al Qaeda.

9        Here, a United States citizen allegedly sold his own Bitcoin to an undercover

10   agent and made a profit.  This case has larger societal implications, as the United

11   States government is now prosecuting Defendant for simply selling his own

12   electronic "property" which is not in and of itself illegal.

13        While citing the related regulation of 31 C.F.R. 1010.11(ff)(5)(A) which

14   specifically states that "money transmission services" is defined as "the acceptance

15   of currency, funds, or other value that substitutes for currency from one person and

16   the transmission of currency, funds, or other value that substitutes for currency **to**

17   **another** location or person by any means" (emphasis added), the government

18   ignores that by its very nature, a "money transmission" requires three parties.

19        However, again, Mr. Rockcoons allegedly sold his own Bitcoin to the

20   undercover agent. That the agent voluntarily overpaid for the Bitcoin does not

21   convert the transaction into one that involves Mr. Rockcoons being considered a

22   "money transmitter" under the statute.  The government also acknowledges that:

23        Section 1960 does not define "business," but defines "money
          transmitting" to include "transferring funds on behalf of the
24        public by any and all means including but not limited to transfers
          within this country or to locations abroad by wire, check, draft,
25        facsimile, or courier." See § 1960(b)(2). Section 1960 also does
          not define "transferring" or "funds."

26   Response, ECF 26, p. 3 , lines 9-14

27

28                                        2

1    Despite the vagueness and ambiguousness of the statute as applied to

2  Defendant, the government suggests that the Section 1960 violation has been

3  sufficiently pled, and thus dismissal is inappropriate.

4    Again, a district court may make preliminary findings of fact necessary to

5  decide the questions of law presented in the motion, as long as the court's findings

6  do not invade the province of the ultimate fact finder. *See United States v. Shortt*

7  *Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The court may dismiss

8  an indictment if "it fails to recite an essential element of the charged offense."

9  *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014) (citing *United States*

10  *v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005)). Here, the indictment does not state

11  a Section 1960 offense, and Defendant's conduct does not fall within 31 U.S.C.

12  5330(d), the operative statute which defines "money transmitting business".

13    The government alleges in its Response that:

14    Defendant is trying to insert into the law an element that is just
    not there, that is, a requirement that in order to be deemed a
15    money transmitting business, one must act as "middleman"
    between two distinct parties. Under 31 U.S.C. § 5330(d), a
16    "money transmitting business" includes "any other person who
    engages as a business in the transmission of funds . . . ." As
17    detailed above, Defendant transmitted bitcoin, and as discussed
    below, bitcoin is "funds" within the purview of section 1960.
18
19  Response, ECF 26, p. 11, lines 21-27

20    Contrary to the government's argument, Defendant is not trying to "insert

21  into the law an element that is just not there". Courts have indicated that a money

22  transmitting business is a business that transmits funds between parties: it receives

23  money from a customer and then transmits that money to a recipient in a place the

24  customer designates. The customer also pays a fee for the service. *See, e.g., United*

25  *States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999); *see also State v. Espinoza*,

26  No. F14-2923, (Fla. 11th Judicial Cir. Ct. July 22, 2016) (citing *Velastegui*).

27

28                                      3

1    The *Velastegui* court further clarified that the statute does not apply to "an
2  isolated instance of improper transmittal of money." *Velastegui*, 199 F.3d at 595
3  n. 4. Here, as described in the Indictment, Mr. Rockcoons was not operating a
4  "money transmitting business." Again, he was approached by the undercover agent
5  and allegedly sold his own "Bitcoin" for money. It is clear that under the facts
6  pled, Mr. Rockcoons was not a middle man for anyone. Rather, it was a two party
7  alleged transaction. It should be noted that in its Opposition, the government made
8  no attempt to specifically address this interpretation as recognized in *United States*
9  *v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999) and *State v. Espinoza*, No.
10  F14-2923, (Fla. 11th Judicial Cir. Ct. July 22, 2016) (citing *Velastegui*) on this
11  specific issue. In *Espinoza*, the court held that the "[D]efendant's actions do not
12  meet the definition of 'transmit'" for purposes of the money-transmitting business
13  charge. The analysis by the court in *Espinoza* illustrates Defendant's argument.

14    The government has misinterpreted the argument and asserts "[t]he crux of
15  Defendant's argument on this point seems to be that Section 1960 requires that the
16  Indictment allege that Defendant transmitted bitcoins to a recipient in a place the
17  customer designated for a fee." Response, ECF 26, p. 11, lines 3-5. The
18  government fails to acknowledge the above cases, and fails to acknowledge that
19  Mr. Rockcoons was not "transmitting" funds or Bitcoin to anyone else.

20    Furthermore, it should be noted that the government alleges that
21  "Defendant's sole source of income for the past nine years has been from fees
22  charged for the buying and selling of Bitcoin for different customers." *See*
23  Response, ECF 26, at p. 11, lines 12-14. While not part of the indictment, the
24  government mischaracterizes this assertion as Defendant apparently indicated that
25  he traded Bitcoin since 2010, which involved trading his own Bitcoin.

26
27
28                                          4

1    It should also be noted that the Response indicates that Defendant charged

2  a "fee" of $5,291.38 for the Bitcoin at issue.  This assertion is also misplaced as the

3  agent sent Defendant $14,500, however, the price of Bitcoin apparently rose and

4  then dropped.  Thus, it is not accurate to state in the government's Response that

5  Defendant simply "charged a fee of $5,291.38 (more than 36%)."  *See* Response,

6  ECF 26, at p. 11, lines 16-17.

7    The government also repeatedly cites *United States v. Faiella*, 39 F. Supp.

8  3d 544 (S.D.N.Y. 2014) in attempt to draw a parallel between that case, and the

9  case at bar.  However, in *Faiella*, the court recognized:

10    [A]s set forth in the Criminal Complaint that initiated this case,
      the Government alleges that Faiella received cash deposits from
11    his customers and then, after exchanging them for Bitcoins,
      transferred those funds to the customers' accounts on Silk Road.
12    Ind. ¶ 5; Complaint ¶¶ 14, 17–18. ***These were, in essence,
      transfers to a third-party agent, Silk Road, for Silk Road users***
13    ***did not have full control over the Bitcoins transferred into their***
      ***accounts. Rather, Silk Road administrators could block or seize***
14    ***user funds***.

15  *Id.* at 546 (emphasis added).  In contrast, Mr. Rockcoons did not maintain control

16  over the Bitcoin after it was provided to the agent, nor is it alleged that he

17  controlled the price.  As such, it is respectfully submitted that this case is

18  distinguishable from *Faiella*.

19    Here, Mr. Rockcoons is specifically charged with engaging in "money

20  transmitting" under 18 U.S.C. 1960, and allegedly not being properly licensed

21  under 31 U.S.C. 5330, not 31 C.F.R. § 1010.100(ff)(5).  In addition, the related

22  regulation of 31 C.F.R. § 1010.100(ff)(5) does not specifically mention Bitcoin,

23  and there are clear exceptions under the regulation.

24

25

26

27

28                                         5

Specifically, 31 C.F.R. § 1010.100(ff)(5) states:

Money transmitter—

(I) In general.

(A) A person that provides money transmission services. The term "money transmission services" means the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means. "Any means" includes, but is not limited to, through a financial agency or institution; a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both; an electronic funds transfer network; or an informal value transfer system; or
(B) Any other person engaged in the transfer of funds.
(ii) Facts and circumstances; Limitations. Whether a person is a money transmitter as described in this section is a matter of facts and circumstances. *The term "money transmitter" **shall not** include a person that only*:

(A) Provides the delivery, communication, or network access services used by a money transmitter to support money transmission services;

(B) Acts as a payment processor to facilitate the purchase of, or payment of a bill for, a good or service through a clearance and settlement system by agreement with the creditor or seller;

© Operates a clearance and settlement system or otherwise acts as an intermediary solely between BSA regulated institutions. This includes but is not limited to the Fedwire system, electronic funds transfer networks, certain registered clearing agencies regulated by the Securities and Exchange Commission ("SEC"), and derivatives clearing organizations, or other clearinghouse arrangements established by a financial agency or institution;

(D) Physically transports currency, other monetary instruments, other commercial paper, or other value that substitutes for currency as a person primarily engaged in such business, such as an armored car, from one person to the same person at another location or to an account belonging to the same person at a financial institution, provided that the person engaged in physical transportation has no more than a custodial interest in the currency, other monetary instruments, other commercial paper, or other value at any point during the transportation;

(E) Provides prepaid access; or

6

(F) Accepts and transmits funds only integral to the sale of goods or the provision of services, other than money transmission services, by the person who is accepting and transmitting the funds.

(emphasis added).

The government also has not sufficiently addressed these regulatory exceptions in its Response, and that at most, under 31 C.F.R. § 1010.100(ff)(5), Mr. Rockcoons acted as a payment processor to facilitate the purchase of a good (butane extractor) as represented by the officer as approved by the fictitious seller, and was integral to the sale of the goods.

As such, no matter how the government may try to characterize this isolated transaction, it is respectfully submitted that Mr. Rockcoons was not improperly engaged in the illegal "money transmitting business" in violation of 18 U.S.C. 1960. This determination can be made as a matter of law, and thus the Section 1960 count should be dismissed.[1]

**II.    "Bitcoin" is not financial currency proscribed by 18 U.S.C. 1960 and 18 U.S.C. 1956, and the Indictment Should be Dismissed.**

Under Defendant's second argument, Bitcoin cannot be considered money for purposes of alleged money laundering or a "money transmitting service." As such, both counts should be dismissed.

The government, in its Response has criticized the Magistrate Judge's Report and Recommendation in the *Petix* case, and cites a small portion of the district court judge's passing comments on the Magistrate's decision. The government also does not include that the district judge in *Petix* also stated on the record that "I'm not really conversant in Bitcoins". *See United States v. Petix*, Case No. 15-cr-

---

[1] The above analysis regarding Section 1960 does not require this Honorable Court to make a determination that Bitcoin qualifies as money for purposes of a Section 1956 or 1960 violation.

7

1    227A, W.D.N.Y., ECF docket no. 79, (transcript of April 6, 2017 hearing ), at p.

2    3, lines 4-5.

3        Respectfully, this Honorable Court should consider as persuasive, the

4    Magistrate Judge's ruling *Petix,* which is well-reasoned and thorough. Furthermore,

5    it should be noted that the district court judge in *Petix* did not address the

6    Magistrate Judge's Report and Recommendation in writing, as the defendant

7    withdrew his Motion and case was ultimately resolved.  Moreover, at said

8    hearing, the court stated that it had only "went through some of the cases..." *See*

9    *id.* at p. 4, lines 5-6. As such, the passing comments of the district judge should not

10    be given weight by this Honorable Court, as even the district court judge

11    recognized that there was no binding authority, and that he had only considered

12    "cases from other jurisdictions...." *See id.* at line 7.

13        The government argues "Defendant's reliance on the magistrate judge's

14    report and recommendation in the *Petix* case – where the judge compared bitcoin

15    'marbles, Beanie Babies™, or Pokémon™ trading cards,' p.12 -- ignores the

16    existential difference between bitcoins and these commodities." *See* Response,

17    ECF at p. 15, lines 15-20.  That something may be considered valuable by another

18    person, does not render that item a currency or money.  Clearly, the government is

19    not alleging that it is illegal to trade baseball cards or other things such as beanie

20    babies. As such, the government's expansion of the term "money" and "money

21    transmitting business", as it relates to Bitcoin is especially troubling considering

22    society's quickly evolving technologies and trends in social media.  There are also

23    various articles and publications online which indicate that Bitcoin is not

24    "currency." *See, e.g.,* Exhibit 1 attached hereto.

25

26

27

28                            8

1   Thus, this reflexive prosecution of an otherwise two party transaction, not
2   only fails to state an offense under the plain language of Section1960, but also
3   violates Defendant's First Amendment rights and freedom to associate.

4   Accordingly, the reasoning set forth in *Petix* and *Espinoza* should be adopted
5   by this Honorable Court, and the indictment at issue should be dismissed. Again,
6   Bitcoin is not a currency backed by a sovereign, has no intrinsic value, and is on
7   a decentralized network that relies on transactions conducted over peer to peer
8   network to gain value through demand. It is not run on a centralized computer.

9   Thus, when Defendant provided the Bitcoin in exchange for the funds, he
10  provided his Bitcoin, which has no intrinsic value, is not backed by a sovereign
11  government, and is not a "currency." As such, it is respectfully submitted that Mr.
12  Rockcoons could not have engaged in a financial transaction for purposes of money
13  laundering or a Section 1960 violation. While the government alleges that
14  Defendant simply agreed to provide Bitcoin in exchange for receipt of the cash
15  proceeds of the alleged "hash oil," again, in essence, Defendant was only providing
16  property with no intrinsic value. Accordingly, the indictment at issue is fatally
17  flawed and should be dismissed.

18  **III.   Conclusion**

19  In light of the foregoing, this Honorable Court should dismiss both counts
20  contained in the Indictment.

21  Dated this 13th day of August, 2018.

22                          Respectfully Submitted:

23                          /s/ Richard A. Schonfeld
                            **DAVID Z. CHESNOFF, ESQ.**
24                          **RICHARD A. SCHONFELD, ESQ**
                            **CHESNOFF & SCHONFELD**
25                          Attorneys for Defendant Morgan Rockcoons

26

27

28                                    9